20-940-cv
*Grano v. Martin*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of July, two thousand twenty.

PRESENT: GUIDO CALABRESI,
DENNY CHIN,
SUSAN L. CARNEY,
*Circuit Judges.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

SERGI HERNANDEZ GRANO,

*Petitioner-Appellee,*

v.                                                          20-940-cv

KATHERINE PATRICIA MARTIN,

*Respondent-Appellant.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR PETITIONER-APPELLEE:          BARRY ABBOTT, Schwartz Sladkus Reich Greenberg Atlas LLP, New York, New York, *and* Jeremy D. Morley, Law Office of Jeremy D. Morley, New York, New York.

FOR RESPONDENT-APPELLANT:          RICHARD MIN, Burger Green & Min LLP, New York, New York.

Appeal from the United States District Court for the Southern District of New York (Seibel, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Respondent-appellant Katherine Patricia Martin appeals from a judgment of the district court, entered March 11, 2020, granting the petition filed by petitioner-appellee Sergi Hernandez Grano for the return of their son (the "Child") to Spain pursuant to the Hague Convention on the Civil Aspects of International Child Abduction (the "Convention"), Oct. 25, 1980, T.I.A.S. No. 11670, 1343 U.N.T.S. 89, implemented in the United States by the International Child Abduction Remedies Act, 22 U.S.C. § 9001 *et seq.*  Martin, the Child's mother and an American citizen, had taken the Child from Spain to the United States without the consent of Grano, the Child's father and a Spanish citizen.  In response, Grano filed this petition below.  On March 11, 2020, following a five-day non-jury hearing, the district court issued detailed findings of fact and conclusions of law in a 55-page decision granting the petition.  We assume familiarity with the facts, procedural history, and issues presented for review.

*DISCUSSION*

On appeal, Martin argues principally that the district court erred in:  (1) finding that the Child's habitual residence was Spain, (2) concluding that the "grave risk" of harm exception did not apply; and (3) failing to require "undertakings" as a condition of the Child's return to Spain.  Appellant's Br. at 12-14.

**1.** *The Habitual-Residence Determination*

Under the Convention, "a child wrongfully removed from [his] country of 'habitual residence' ordinarily must be returned to that country," as the interests of the child are usually best served when custody decisions are made in the courts of the home country. *Monasky v. Taglieri*, 140 S. Ct. 719, 723 (2020). A parent can invoke the protection of the Convention only if the child is a "habitual resident" of a State signatory to the Convention and has been removed to or retained in a different State that is also a signatory of the Convention. *See Gitter v. Gitter*, 396 F.3d 124, 130 (2d Cir. 2005). The burden of proof is on the petitioner to show by a preponderance of the evidence that the child was the habitual resident of a State and has been wrongfully removed to or retained in a different State. *Id.* at 131; *see also* 22 U.S.C. § 9003(e)(1)(A).

Under *Monasky*, "a child's habitual residence depends on the totality of the circumstances specific to the case." 140 S. Ct. at 723. "An actual agreement between the parents is not necessary to establish a [child's] habitual residence." *Id.* Some factors for courts to consider in determining "habitual residence" include where a child has lived, the length of time there, acclimatization, and the "purposes and intentions of the parents." *Id.* at 728 (internal citations omitted). Physical presence in a country is not a dispositive indicator of an infant's habitual residence. *See id.*, 140 S. Ct. at 729.

We review a "first-instance habitual-residence determination . . . for clear error." *Id.* at 723. While a child's habitual residence presents a mixed question of law and fact, "[t]he habitual-residence determination . . . presents a task for factfinding

courts, not appellate courts, and should be judged on appeal by a clear-error review standard deferential to the factfinding court." *Id.* at 730.

Here, after carefully considering the evidence and weighing the credibility of the witnesses, the district court found that the Child's habitual residence was Spain. There was ample support in the record for this conclusion. For example, when Martin and the Child flew to Spain on October 3, 2017, they did so on a one-way ticket, and Martin did not retain any bank accounts in the United States. Martin and Grano engaged in activities in Spain consistent with being a couple intending to raise their child in that country, including finding a school for the Child, buying a house together, and making decisions about the design and furnishing of the house. In April 2018, while Martin was on a visit to New York with the Child, she registered him with the Spanish Consulate as a Spanish citizen. Later that month, Martin returned to Spain with the Child, and in May she registered him as a resident of their town in Spain. In July 2018, Martin and Grano signed the deed to a house in Spain, and they began to live there as a family. On these and other facts in the record, and applying the deferential standard of review mandated by *Monasky*, we conclude that the district court did not clearly err in finding that the totality of the circumstances showed that the Child's habitual residence was in Spain.

**2.** *The Grave Risk Exception*

Even if the removal of a child is wrongful, under the Convention there are four exceptions to the requirement that the child be returned to the country of habitual

residence. *See Ermini v. Vittori*, 758 F.3d 153, 161 (2d Cir. 2014). The relevant exception in this case is the "grave risk" exception: return will not be required if it "would place [the child] at a 'grave risk' of harm or otherwise in 'an intolerable situation.'" *Monasky*, 140 S. Ct. at 723; *see also* Convention, art. 13(b) (one exception is if "there is a grave risk that [the child's return] would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation"). The grave risk exception is an affirmative defense, and the burden is on the respondent to prove the defense by clear and convincing evidence, though the underlying facts must only be proven by a preponderance of the evidence. *See* 22 U.S.C. § 9003(e)(2)(A). A grave risk of harm occurs where the "petitioning parent had actually abused, threatened to abuse, or inspired fear in the children in question." *Ermini*, 758 F.3d at 164 (quoting *Souratgar v. Lee*, 720 F.3d 96, 105 (2d Cir. 2013)). Spousal violence can also create a grave risk of harm to the child, particularly if the violence occurs in front of the child. *Id.* This Court has held, however, that spousal abuse is "only relevant under Article 13(b) if it seriously endangers the child." *Souratgar*, 720 F.3d at 103-104.

In considering the parties' arguments with respect to the grave risk exception, we review the district court's factual findings for clear error, and its application of the Convention to those findings *de novo*. *Ermini*, 758 F.3d at 160.

In light of the district court's detailed factual findings, we are not persuaded that it erred in concluding that Martin had failed to show, by clear and convincing evidence, that the Child would be placed at a grave risk of harm if he were

to be returned to Spain for custody proceedings. While the district court found that Grano was psychologically abusive towards Martin on numerous occasions, grabbed her by the arm on one occasion, and exerted coercive control over her, it was not persuaded, by clear and convincing evidence, that Grano posed a grave risk to the Child by virtue of his efforts to control Martin. *See Blondin v. DuBois ("Blondin II")*, 238 F.3d 153, 162 (2d Cir. 2001) (holding that the grave risk defense applies when there is "a real risk of [the child] being hurt, physically or psychologically, as a result of repatriation"). Indeed, the district court concluded that the Child "is not at a grave risk of being the victim of abuse himself." S. App'x at 51. There was support in the record for these factual findings, and we are not persuaded that the district court erred in declining to invoke the grave risk exception.

**3.    *Undertakings***

Where a court orders the return of a child under the Convention to his country of habitual residence, it may impose an "undertaking" to ensure that the child is not harmed upon his return. As this Court explained in *Blondin II*, "[a]lthough the Hague Convention does not use the term 'undertaking,' in cases under the Convention courts use the term 'undertaking' to refer to a promise by the petitioning parent 'to alleviate specific dangers that might otherwise justify denial of the return petition. Typical undertakings concern support, housing and the child's care pending resolution of the custody contest.'" 238 F.3d at 159 n.8. Where a district court orders the return of

a child, it has "broad equitable discretion" to impose conditions to protect the child. *Blondin v. Dubois* ("*Blondin I*"), 189 F.3d 240, 249 (2d Cir. 1999).

The parties dispute whether a district court has jurisdiction to order undertakings when it declines to invoke the grave risk exception. We need not resolve the issue, for even assuming the district court had jurisdiction to order undertakings, we conclude that it did not abuse its discretion in declining to do so, where, as here, there was no grave risk of harm to the Child upon his return to Spain. Notably, while the district court reiterated its finding that Grano did subject Martin to "a serious form of domestic abuse," it also expressed its confidence that "the courts of Spain [would] appreciate the implications of those facts." S. App'x at 55.

\* \* \*

We have considered Martin's remaining arguments and conclude they are without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk